# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6941-GW (GJSx) | Date | December 15, 2016 |
|---|---|---|---|
| Title | *Vahe Messerlian v. Rentokil North America, Inc.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Maria Bustillos | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Chant Yedalian | Robert J. Herrington |

**PROCEEDINGS:** PLAINTIFF'S MOTION TO REMAND TO STATE COURT [11]

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, Plaintiff's motion is TAKEN UNDER SUBMISSION. Court to issue ruling.

A Scheduling Conference is set for January 26, 2017 at 8:30 a.m. Parties will file a joint Rule 26(f) report by noon on January 23, 2017.

|   |   |
|---|---|
|   | : 25 |
| Initials of Preparer | JG |

*Messerlian, et al., v. Rentokil N. Am., Inc., et al.*, Case No. CV-16-6941-GW (GJSx)
Tentative Ruling Following Supplemental Briefing Regarding Plaintiff's Motion to Remand

## I. Background

On November 10, 2016, the Court held a hearing and issued a Ruling regarding Plaintiff's Motion to Remand in the instant action, which asserts two causes of action for (1) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*; and (2) violation of the California Business & Professions Code § 17538.43.  *See generally* Notice of Removal Ex. A at 3-18, Docket No. 1-1 (the Complaint).  Although Defendant removed this case on the basis of federal jurisdiction, Defendant also asserted as an affirmative defense in its Answer that Plaintiff lacks standing to sue under the TCPA because "Plaintiff does not have any particularized or concrete injury."  *See generally* Ruling, Docket No. 22.  Plaintiff thereafter moved to remand the action to state court on the grounds that Defendant had failed to establish that this Court has subject matter jurisdiction.  *Id.*  In its Ruling, the Court indicated that Defendant's Answer did not provide a basis to remand the case, but *sua sponte* ordered the parties to address whether Plaintiff has standing to sue under the TCPA, based on the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549-50 (2016).  *Id.*

The Court is now in receipt of the parties' cross-supplemental briefs and cross-responses. *See* Pl.'s Supp'l Br., Docket No. 23; Def.'s Supp'l Br., Docket No. 24; Pl.'s Cross-Response, Docket No. 26; Def.'s Cross-Response, Docket No. 25.  Neither party has sufficiently addressed the Supreme Court's holding in *Spokeo* or how it applies to the instant case – indeed, no party even references *Spokeo* in the briefing submitted on this matter.  Rather, the parties continue to raise arguments relating to whether or not Defendant has met its burden of establishing that the Court has subject matter jurisdiction, which the Court already addressed in its previous Ruling. Nevertheless, the Court will delineate the relevant standard for determining whether a plaintiff has constitutional standing and then address the issues raised by *Spokeo* as they apply to the instant action.

## II. Legal Standard

In order for a court to have subject matter jurisdiction, a plaintiff must have standing to bring a claim.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also* U.S. Const. art. III, § 2.  To demonstrate standing, a plaintiff must establish that it has suffered an

1

"injury in fact" that is both "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). An injury cannot be "conjectural" or "hypothetical." *Id.* (quoting *Whitmore*, 495 U.S. at 155). Additionally, the injury must be "fairly traceable to the challenged action of the defendant" and likely to be "redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61).

### III. Analysis

The Supreme Court recently held that a statutory violation alone does not establish a concrete injury. *See Spokeo*, 136 S.Ct. at 1549. In *Spokeo*, the district court held that the plaintiff had failed to establish an injury in fact from the defendant's alleged publication of inaccurate information about the plaintiff, in violation of the Fair Credit Reporting Act of 1970 (the "FCRA").[1] *See Spokeo*, 136 S. Ct. at 1544. After the Ninth Circuit reversed, the Supreme Court remanded back to the Ninth Circuit, explaining that the Ninth Circuit's analysis was incomplete because it had only addressed whether the alleged injury was particularized, and failed to consider whether the alleged injury was also concrete. *Id.* at 1545. The Court emphasized that a "'concrete' injury must be '*de facto*'; that is, it must actually exist . . . . 'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Id.* at 1548-49 (emphasis in original).

In determining whether an intangible harm can constitute an injury in fact, the Court explained that "both history and the judgment of Congress play important roles." *Id.* at 1549. However, the Court emphasized that "Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [the plaintiff] could not, for example, allege a bare procedural violation, divorced from concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* The Court further explained that:

> A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting

---

[1] In *Spokeo*, the defendant operated a "people search engine" wherein a visitor at the defendant's website puts in a name, phone number or e-mail address and the defendant conducts a computerized search in a wide variety of databases and provides information about the subject of the search. *See* 136 S. Ct. at 1544. At some point in time, someone made a Spokeo search request for information about the plaintiff and the profile generated by Spokeo indicated that he was married, has children, is in his 50's, has a job, is relatively affluent, all of which was incorrect. *Id.* at 1546. When plaintiff learned of these inaccuracies, he filed a complaint on his own behalf and on behalf of a class of similarly situated individuals under the FCRA. *Id.* at 1544. As noted by the Supreme Court, "[t]he FCRA seeks to ensure 'fair and accurate credit reporting.' [15 U.S.C.] §1681(a)(1)." *Id.*

> agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Id.* at 1550.

In the wake of *Spokeo*, district courts in the Ninth Circuit have split over whether a violation of the TCPA is sufficient to establish a concrete injury. District courts in the Southern District of California have held that there is no standing where the plaintiff's alleged concrete injury is divorced from the defendants' TCPA violation. *See Ewing v. SQM US, Inc.*, __ F.Supp.3d __, 2016 WL 5846494, at *2 (S.D. Cal. Sept. 29, 2016); *Romero v. Dep't Stores Nat'l Bank*, __ F.Supp.3d __, 2016 WL 4184099, at *3 (S.D. Cal. Aug. 5, 2016). In *Romero*, a credit card holder sued a debt collector for placing automated calls to her cell phone over 290 times, in violation of the TCPA. *See Romero*, 2016 WL 418099, at *1. The plaintiff contended that the harm she suffered included unwanted calls to her cell phone and invasion of her privacy, as well as lost time, aggravation, and distress. *Id.* at 3-4. The court held that the plaintiff's alleged concrete harm was divorced from the alleged violation of the TCPA, explaining that:

> [p]laintiff's failure to connect any of these claimed injuries in fact with any (or each) specific TCPA violation is alone fatal to [p]laintiff's standing argument . . . . Put differently, [p]laintiff does not offer any evidence demonstrating that [d]efendants' use of an [automated telephone dialing system ("ATDS")] to dial her number caused her greater lost time, aggravation, and distress than she would have suffered had the calls she answered been dialed manually, which would not have violated the TCPA. Therefore, Plaintiff did not suffer an injury in fact traceable to Defendants' violation of the TCPA.

*Id.* at *4-5. The court further rejected the plaintiff's argument that the purpose of the TCPA was to protect consumers against the proliferation of telemarketing calls that are a nuisance and invade consumers' right to privacy, explaining that:

> [t]he TCPA was meant to protect societal or public harm caused by the increasing number of unwanted telemarketing calls to consumers that the use of an ATDS allowed telemarketers to make. The harm identified by Congress was based on the quantity of calls consumers were receiving from telemarketers, not based on the use of ATDS. The use of an ATDS may enable telemarketers to make more phone calls, but it is the calls themselves that result in the

> public harm that caused Congress to enact the TCPA. Thus, as a method of protecting the public from the harm caused by the proliferation of telemarketing calls, the TCPA restricted the use of an ATDS.

*Id.* at *5 (internal citations omitted).

Similarly, in *Ewing*, the court held that the plaintiff lacked standing to sue for a TCPA violation based on one call placed to his cellular phone using an ATDS because the plaintiff's alleged injury – the charge incurred on his cell phone for the incoming call – would have been incurred even if the defendant had dialed his cell phone manually. *See Ewing*, 2016 WL 5846494, at *2. The court emphasized that "to use the language from *Spokeo*, Plaintiff's alleged concrete harm is divorced from the alleged violation of the TCPA." *Id.* at *3 (citing *Spokeo*, 136 S.Ct. at 1549).

In contrast, other courts in the Ninth Circuit have held that "allegations of nuisance and invasions of privacy in TCPA actions are concrete" injuries that establish standing. *See Mbazomo v. Etourandtravel, Inc.*, 16-CV-2229-SB, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016); *Cabiness v. Educ. Fin. Sols., LLC*, 16-CV-1109-JST, 2016 WL 5791411, at *5 (N.D. Cal. Sept. 1, 2016); *Juarez v. Citibank, N.A.*, No. 16-CV-1984-WHO, 2016 WL 4547914, at *3 (N.D. Cal. Sept. 1, 2016); *Hewlett v. Consolidated World Travel, Inc.*, 16-713 WBS AC, 2016 WL 4466536, at *2 (E.D. Cal. Aug. 23, 2016); *Cour v. Life360, Inc.*, 16-CV-00805-TEH, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016); *Booth v. Applestack, Inc.*, No. 13-1553JLR, 2016 WL 3030256, at *7 (W.D. Wash. May 25, 2016). In *Mbazomo*, the court held that a violation of the TCPA represents a concrete injury because "[t]he history of sustaining claims against both unwelcome intrusion into a plaintiff's seclusion and unceasing debt-collector harassment are squarely 'harm[s] that [have] traditionally been regarded as providing a basis for a lawsuit.'" *Mbazomo*, 2016 WL 7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at 1549-50). The court declined to follow *Romero*, explaining that *Romero* "improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged harms suffered." *Id.*

Similarly, in *Cabiness*, the court held that a violation of the TCPA represents a concrete injury because "[e]very unconsented call through the use of an ATDS to a consumer's cellular phone results in actual harm: the recipient wastes her time and incurs charges for the call if she answers the phone, and her cell phone's battery is depleted even if she does not answer the phone

4

. . . . unsolicited calls also cause intangible harm by annoying the consumer." *Cabiness*, 2016 WL 5791411, at *5 (internal citations omitted). And in *Juarez*, the court held that the plaintiff's allegation "that he received repeated unwanted calls that caused him aggravation, nuisance, and an invasion of privacy, is sufficient to allege a 'concrete' and 'particularized' injury that establishes standing under *Spokeo*." *Juarez*, 2016 WL 4547914, at *3. However, the court in *Juarez* emphasized that "[t]his does not mean any violation of the TCPA will necessarily give rise to Article III standing – for example, calls made to a neglected phone that go unnoticed or calls that are dropped before they connect may violate the TCPA but not cause any concrete injury." *Id.*

Here, the Complaint alleges that Plaintiff received one or more unsolicited facsimile advertisements from Defendant, including an advertisement received on March 27, 2015.[2] *See* Compl. ¶ 29. Moreover, the Complaint alleges that Plaintiff was not in a business relationship with Defendant that would authorize the sending of the unsolicited advertisements. *Id.* ¶ 34. The Complaint further alleges that Defendant "violated the TCPA because the unsolicited advertisements which Defendant[] sent did not contain the notice required by 47 U.S.C. § 227(b)(2)(D) stating that "the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements . . . and that failure to comply . . . is unlawful." *Id.* ¶¶ 5, 34-35 (quoting 47 U.S.C. § 227(b)(2)). Finally, the Complaint alleges

---

[2] The TCPA makes it unlawful for any person:

> to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless—
> **(i)** the unsolicited advertisement is from a sender with an established business relationship with the recipient;
> **(ii)** the sender obtained the number of the telephone facsimile machine through--
> > **(I)** the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or
> > **(II)** a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and
> **(iii)** the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D).

*See* 47 U.S.C. § 227(b)(1)(C).

5

that Defendant's conduct "constitutes a highly offensive intrusion into the homes and/or businesses of Plaintiff . . . and violates the right of privacy of Plaintiff . . . . The damages sought herein constitute 'Advertising Injury' within the meaning of standard-form Commercial General Liability or Comprehensive General Liability insurance policies maintained by most businesses." *Id.* ¶ 42.[3]

Defendant's alleged failure to provide the requisite notice with the unsolicited facsimiles appears to be the type of procedural violation that the *Spokeo* Court indicated was insufficient to establish a concrete injury. *See Spokeo*, 136 S.Ct. at 1549. Indeed, it is unclear how a failure to provide the notice invaded Plaintiff's privacy – even if the notice had been provided, Plaintiff still would have received the underlying facsimile.

However, the Complaint also appears to allege a violation of the TCPA based on the receipt of the unsolicited fax itself. *See* Compl. ¶¶ 29, 32. Unlike with unsolicited telephone calls, to raise a TCPA violation based on the receipt of an unsolicited facsimile advertisement, there is no requirement that an ATDS be used. *Compare* 47 U.S.C. § 227(b)(1)(B) *with* 47 U.S.C. § 227(b)(1)(C). In light of this difference, the Court would find that *Romero* and *Ewing* are distinguishable – here, the invasion of Plaintiff's privacy would not have occurred absent the unsolicited facsimile, and thus the alleged harm is not divorced from the TCPA violation.[4]

Although Plaintiff's allegation that Defendant's conduct invaded his right to privacy is somewhat conclusory, the Court would find that it is sufficiently plausible to establish a concrete injury and, therefore, standing to sue under the TCPA. *See Hewlett*, 2016 WL 4466536, at *2 (allegations that defendant's calls caused plaintiff aggravation, nuisance, and invaded her privacy were sufficient to establish concrete injury, emphasizing that these harms "necessarily accompan[y] the receipt of unsolicited and harassing telephone calls"); *Cour*, 2016 WL 4039279,

---

[3] The Court does not believe that Plaintiff's allegation that the damages it seeks constitute an "Advertising Injury" under state law are sufficient to allege a concrete injury. Rather, the Court focuses its analysis on whether the allegation that the unsolicited advertisements violated Plaintiff's right to privacy adequately plead a concrete injury.

[4] Plaintiff briefly argues that there is no standing for TCPA claims, and cites to *Supply Pro Sorbents, LLC v. Ringcentral, Inc.*, C 16-02213 JSW, 2016 WL 5870111, at *3 (N.D. Cal. Oct. 7, 2016). However, in that case, the plaintiff alleged that the defendant's practice of adding unsolicited advertising information to the single line identifier on the bottom of the cover page of documents (which the plaintiff had requested) sent by facsimile violated the TCPA. The plaintiff alleged that the single line identifier violated the recipient's privacy and wasted the recipient's time. *Id.* The court rejected these allegations of harm, explaining that "[a]lthough these facts may generally be true of unsolicited fax advertisements, it is not clear how [p]laintiff alleges it specifically suffered these particular harms from the single line identifier on the optional cover sheet of a solicited four-page fax." *Id.* This case is therefore distinguishable.

at *2 ("[Plaintiff] has not simply alleged a procedural violation; instead, he relies on an allegation that he was harmed because [defendant] invaded his privacy.").

## IV. Conclusion

In sum, the Court would find that Plaintiff has constitutional standing, and therefore would not remand the instant action.